IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Steven C. Brown, a/k/a Steven Cory Brown, | ) Civil Action No: 8:13-cv-674-DCN-JDA |
| Plaintiff, | ) |
| vs. | ) **REPORT AND RECOMMENDATION** ) **OF MAGISTRATE JUDGE** |
| Willie L. Eagleton; Robin K. Chavis; James Bethea; Argie Graves, | ) |
| Defendants. | ) |

This matter is before the Court on Defendants' motion for summary judgment [Doc. 71] and Plaintiff's cross-motion for summary judgment [Doc. 74.]  Under the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d), D.S.C., magistrate judges are authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983, and to submit findings and recommendations to the District Court.

Plaintiff, proceeding pro se, brings this action against Defendants alleging violation of his Fifth, Eighth and Fourteenth Amendment rights.  [Doc. 1.]  Defendants filed their motion for summary judgment on August 19, 2013.  [Doc. 71.]  By Order filed on August 20, 2013, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the dismissal/summary judgment procedure and the possible consequences if he failed to adequately respond to the motion.  [Doc. 72.]  Plaintiff filed his own motion for summary judgment on September 23, 2013, addressing Defendants' arguments. [Doc. 74.]  That same day, Plaintiff also filed a motion for entry of default in which he advanced arguments against Defendants' motion that the Court has considered here.  [Doc. 75.] Defendants filed

1

a response to Plaintiff's motion on October 10, 2013, [Doc. 79], and Plaintiff replied on October 21, 2013 [Doc. 82.] Accordingly, the motions are now ripe for review.

## BACKGROUND

Plaintiff is an inmate and is currently housed at Perry Correctional Institution ("Perry") [Doc. 9.] At the time he filed this action, Plaintiff was housed at McCormick Correctional Institution. [Doc. 1 at 2.] He alleges that in 2003, he "brought a life/death situation" to the attention of prison officials at the Evans Correctional Institution ("Evans"), where he was housed at the time. [*Id.* at 3.] He requested protective custody and, as a result, was transferred to Perry. [*Id.*] In 2004, Plaintiff was transferred back to Evans, where he again requested protective custody as a result of the undescribed situation in 2003. [*Id.*] Plaintiff was denied protective custody. [*Id.*] Plaintiff then swallowed an overdose of pills "in an attempt to go to lock up." [*Id.*] He was taken to the medical unit and then placed back in his general housing unit. [*Id.*] After being taken back to his unit, Plaintiff was assaulted by unknown prisoners who Plaintiff alleges were gang members. [*Id.* at 4.] He suffered bruises, was examined by the medical staff, and alleges he was subsequently placed in protective custody. [*Id.*]

In 2005, Defendant James Bethea ("Bethea") allegedly informed Plaintiff that all the individuals who assaulted Plaintiff had been sent to a different institution, so it was safe for Plaintiff to return to the general unit. [*Id.*] Upon Plaintiff's return to the unit, Plaintiff received threats that other inmates were going to stab him. [*Id.*] Plaintiff decided to get caught for a masturbation charge so he would be placed back in lock up. [*Id.*] From that time forward, Plaintiff decided to "ca[tch] a huge amount of disciplinaries to keep himself in

lock up because Defendant Eagleton [("Eagleton")], warden at Evans, threatened to send Plaintiff back to population" even though Eagleton was aware of the 2004 assault. [*Id.* at 4-5.] Plaintiff claims that Bethea told him Eagleton knew of the assaults on Plaintiff even though Eagleton denied knowing of them. [*Id.* at 5.] Plaintiff and his case manager Maddox sent multiple requests to Defendants Bethea and Chavis to place Plaintiff in protective custody through 2009. [*Id.*] Additionally, Plaintiff alleges his 2003 grievance on the matter went unprocessed. [*Id.*] He requested that his submitted grievance papers be returned to him, but alleges they never were. [*Id.* at 5-6.] Plaintiff alleges he filed other grievances that were not addressed. [*Id.* at 6.] He even wrote Senator Ralph Anderson about the violations of his rights. [*Id.*] Plaintiff asserts he was forced to stay in "max" for six years because Defendants denied him assistance and this confinement affected him mentally and emotionally. [*Id.*] He claims the situation "still continues" as he is currently housed in "P.C." but concedes that those at McCormick are trying to help him. [*Id.* at 7.] Plaintiff requests that each Defendant be made to pay him $75,000. [*Id.* at 8.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at

520–21.  The mandated liberal construction means only that if the court can reasonably

read the pleadings to state a valid claim on which the petitioner could prevail, it should do

so.  *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the

plaintiff's legal arguments for him.  *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993).

Nor should a court "conjure up questions never squarely presented."  *Beaudett v. City of*

*Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional

violations by persons acting under color of state law.  Section 1983 provides, in relevant

part,

> [e]very person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . subjects, or
> causes to be subjected, any citizen of the United States or any
> person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured in an action at law, suit
> in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must prove two elements:

(1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the

United States" and (2) that the defendant "deprived [him] of this constitutional right under

color of [State] statute, ordinance, regulation, custom, or usage."  *Mentavlos v. Anderson*,

249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action"

requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured
> by the Constitution are protected only against infringement by

governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).[1]  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989).  "Only disputes over

---

1 In their motion, Defendants cite to Rule 12(b)(6) but move for summary judgment.  As Defendants request that the Court consider evidence outside of Plaintiff's Complaint and the Court has considered such evidence, the summary judgment standard is the appropriate analysis.  *See Mattress v. Taylor*, 487 F.Supp.2d 665, 669 (D.S.C. 2007).

facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Statute of Limitations**

Defendants first argue that Plaintiff's Complaint is barred by the applicable statute of limitations. There is no federal statute of limitations that is applicable to suits filed pursuant to § 1983, thus federal courts should borrow the analogous state statute of limitations--the state's personal injury statute of limitations. *Owens v. Okure*, 488 U.S. 235, 240-41 (1989). The general statute of limitations in South Carolina for personal injury actions is three years. S.C. Code. Ann. § 15-3-530(5).

"While the statutory limitations period for § 1983 actions is borrowed from state law,

'[t]he time of accrual of a civil rights action is a question of federal law.'" *Nat'l Adver. Co. v. City of Raleigh,* 947 F.2d 1158, 1162 (4th Cir. 1991) (quoting *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975). An action accrues when a plaintiff has sufficient factual knowledge of the resultant harm that a reasonable inquiry would reveal his cause of action. *Nasim v. Warden, Md. House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995).

Here, the specific dates alleged in Plaintiff's Complaint are from 2003, 2004, 2005 and 2009, all of which would be outside of the statute of limitations, as this action was filed on March 18, 2013 [Doc. 1], more than three years after the dates alleged in the Complaint. However, in liberally construing the Plaintiff's Complaint, Plaintiff may allege a continuing violation of his rights because he claims that the violations "still continue" and that he remains in "P.C." [Doc. 1 at 7.] The continuing violation doctrine may apply when a series of wrongful acts creates a series of claims; the limitations period begins to run anew with each wrongful act. *See Green v. Rubenstein*, 644 F.Supp.2d 723, 747 (S.D. W.Va. 2009). Courts have applied the continuing violation doctrine to deliberate indifference claims. *Id.* While Plaintiff's Complaint does not specifically allege the continuing violation doctrine and arguably is barred by the statute of limitations because the specific acts occurred from 2003 to 2009, in an abundance of caution the Court will consider the merits of the claims.

**Exhaustion of Administrative Remedies**

Next, Defendants claim that they are entitled to summary judgment on Plaintiff's claims because Plaintiff failed to exhaust his administrative remedies prior to initiating litigation, as required by 42 U.S.C. § 1997e(a). In support of this argument, Defendants filed an affidavit from Ann Hallman ("Hallman"), Chief of the Inmate Grievance Branch at the

South Carolina Department of Corrections. [Doc. 79-2.] Hallman outlines the multiple grievances that Plaintiff filed with her department. Plaintiff filed Grievance No. ECI 0949-04 on November 16, 2004, concerning his custody status. [*Id.* at 1.] The grievance was returned to Plaintiff because he did not specify how he tried to resolve the grievance informally; Hallman avers that he was given instructions on how to attempt informal resolution. [*Id.*] Plaintiff submitted Grievance ECI 0374-11 on March 21, 2011, alleging that Eagleton placed Plaintiff in "reckless endangerment." [*Id.*] The grievance was dismissed at the Step 2 appeal because Plaintiff was attempting to appeal two convictions on one grievance. [*Id.*] Plaintiff sent Grievance No. ECI 0591-11 on May 2, 2011, alleging that his grievances had not been properly processed. [*Id.* at 2.] This was again dismissed at Step 2 because Plaintiff did not provide any grievance numbers to be investigated. [*Id.*] Plaintiff submitted Grievance No. ECI 0638-11 on May 11, 2001, to again complain about the processing of his grievances. The Step 2 appeal was denied for failing to provide specific allegations. [*Id.*] Plaintiff's Grievance No. ECI 9081-11 was received on May 23, 2011, and was returned unprocessed because Plaintiff did not submit the grievance through his Inmate Grievance Coordinator "as required by policy." [*Id.*] Plaintiff's final grievance was submitted on May 31, 2011, No. KRCI 0885-11, and was returned unprocessed for attempting to complain about multiple issues. [*Id.*]

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the

United States Supreme Court observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted).

Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 524, 532. The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative grievance process). *But see Jones*, 549 U.S. at 219–24 (rejecting "total exhaustion rule" and holding that when presented with a complaint containing exhausted and unexhausted claims, courts should

"proceed[] with the good and leave[] the bad"). Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes all steps of a prison's grievance procedure, and § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court. *See, e.g.*, *Ayre v. Currie*, No. 05-3410, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007); *Charles v. Ozmint*, No. 05-2187, 2006 WL 1341267, at *4 (D.S.C. May 15, 2006).

Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint. *Jones*, 549 U.S. at 211–12; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005). However, to survive a motion for summary judgment asserting he failed to exhaust, the inmate is required to produce evidence in response to the motion that refutes the claim that he failed to exhaust. *See Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir. 2010) (unpublished opinion) (holding that "to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial" (citing Fed. R. Civ. P. 56(e)(2))); *see also Celotex*, 477 U.S. at 323–24 (stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue).

In the present action, Defendants have failed to carry their burden of proof and demonstrate that Plaintiff failed to exhaust his administrative remedies. In their motion for summary judgment and response, Defendants argue that "in order to exhaust administrative remedies, an inmate must fill out a Form 10-5 (Step 1 Grievance form) within fifteen days

of the alleged incident" and must also file a Form 10-5a (Step 2 Appeal) after a receiving a response to Step 1. [Docs. 71, 79 at 2.] Upon this basis, Defendants argue that Plaintiff failed to exhaust his remedies.[2] However, according to Hallman's affidavit, Plaintiff did file a Step 2 grievance for at least three of his grievances and at least one was termed denied. Moreover, though Hallman refers to policy and alleges that Plaintiff failed to follow it by failing to informally resolve his grievance or complaining of multiple events in one grievance, Defendants fail to submit the appropriate policy to the Court for consideration[3] or allege that Plaintiff knew or should have known of each of the policies when he submitted his grievances. Moreover, Plaintiff alleges in his motion and response that he continued to inquire about his grievances, and Defendants failed to provide him information or return his documents to him. Therefore, although the Court harbors doubts as to whether Plaintiff did in fact exhaust his administrative remedies, the Court is unable to conclude that Defendants have proven at this stage that there is no material fact about Plaintiff's failure to exhaust. The Court proceeds to consider the claims on their merits.

**Failure to Protect/Deliberate Indifference/Unsafe Conditions**

Construed liberally, Plaintiff alleges that Defendants were deliberately indifferent because they failed to protect him from other inmates, resulting in unsafe conditions for

---

2  The Court notes that none of the grievances attached by Defendants to Hallman's affidavit were denied or dismissed as untimely.

3  Courts have taken judicial notice of parts of the SCDC grievance policy, *Cambron v. Harris*, Case No. 3:11-cv-326-RMG-JRM, 2012 WL 1579580 (D.S.C. April 11, 2012), but Defendants here rely on multiple aspects of the policy without citing to any record or supporting documentation. Moreover, Defendants' own evidence is that at least one of Plaintiff's grievances was appealed to the Step 2 level and denied. Considering this evidence, along with Plaintiff's allegations of continued attempts to complete the grievance procedure, which could be construed as an allegation of substantial compliance with the exhaustion requirement because of the SCDC's failure to respond, the Court finds it appropriate to consider Plaintiff's claims on the merits in an abundance of caution.

Plaintiff.[4] Plaintiff's allegations of deliberate indifference and failure to protect implicate the

Eighth Amendment's proscription against cruel and unusual punishment, not the Fourteenth

Amendment's requirement of due process. *See Bell v. Wolfish*, 441 U.S. 520, 535-38 (1979)

(noting that a sentenced inmate may not constitutionally be subjected to cruel and unusual

punishment under the Eighth Amendment while holding that claims concerning confinement

conditions upon a pre-trial detainee are to be evaluated under the Due Process Clause).

The Eighth Amendment protects inmates from physical harm at the hands of fellow

inmates resulting from "the deliberate or callous indifference of prison officials to specific

known risks of such harm." *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987) (citing *Davis*

*v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979)). The United States Supreme Court and

the Fourth Circuit have rejected a negligence standard in determining deliberate indifference.

---

4 The Court has construed Plaintiff's claims and resultant alleged damages as a failure to protect claim. In one line in his Complaint, Plaintiff states that he is "still seeking mental health counseling." [Doc. 1 at 6.] In his motion for summary judgment, Plaintiff says he has yet to receive mental health treatment. [Doc. 74 at 2.] However, Plaintiff has failed to state a claim for failure to provide medical treatment. First, Plaintiff has been transferred to a different facility and thus any request for medical treatment or injunctive relief would be moot. *See Slade v. Hampton Rds. Reg'l Jail*, 407 F.3d 243, 248-49 (4th Cir. 2005) (holding former detainee's request for injunctive relief was moot). Second, Plaintiff has not stated a claim for failure to provide medical treatment in his Complaint. The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104.
   Deliberate indifference is a very high standard. In *Miltier v. Beorn*, the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." 896 F.2d 848, 851 (4th Cir. 1990) (overruled in part on other grounds by Farmer v. Brennan, 511 U.S. 825, 837 (1994)). Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle*, 429 U.S. at 104; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir.1986). Plaintiff has not alleged deliberate indifference to his medical needs in his claim or in his motion; therefore, the Court proceeds under the failure to protect analysis.

*See Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Moore v. Winebrenner,* 927 F.2d 1312, 1315–17 (4th Cir. 1991).  Thus, merely negligent behavior on the part of a prison official in failing to protect a prisoner from a risk of harm does not present a constitutional violation. *See Whitley*, 475 U.S. at 319 ("[C]onduct that does not purport to be punishment at all must involve more than ordinary lack for due care . . . . [O]bduracy and wantonness, not inadvertence . . . characterize the conduct prohibited by [the Eighth Amendment]."); *see also Moore,* 927 F.2d at 1316 (citing Fourth Circuit cases adopting the Supreme Court's reasoning in *Whitley*).

        Upon review of the record, the Court finds that Plaintiff's alleged facts in support of his failure to protect claim simply do not rise to the level of a constitutional violation.  Plaintiff does not allege any facts to show he was exposed to a substantial risk of serious harm in that if nothing was done he was almost certain to face serious injury at the hands of other inmates.  *See Baze v. Rees*, 553 U.S. 35, 49–50 (2008) (noting that the Eight Amendment protects against risk of future harm that  is "'*sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers" (citation omitted) (emphasis in original)).  The only assaults that Plaintiff alleges occurred were in 2003 and 2004.  Plaintiff claims that he was, in fact, placed in protective custody after the 2004 incident. [Doc. 1 at 3.]  Eagleton testified that an investigation was conducted into Plaintiff's requests for protective custody and such protective measures were deemed unnecessary. [Doc. 71-10 at 1.]  Eagleton averred that if Plaintiff's situation required protective custody, he would have been placed there, but Plaintiff was unable to provide any information to substantiate his request showing he was in danger.  [*Id.* at 2.]  Eagleton also testified that

Plaintiff has received over 90 convictions since being incarcerated and attached a list of such convictions to his affidavit. [*Id.*] These charges included sexual misconduct and public masturbation charges. [*Id.*] Eagleton met with Plaintiff several times when Plaintiff was on disciplinary detention and offered to release Plaintiff to the general population, but Plaintiff declined to leave lock up because he did not want to wear the pink jumpsuit he would have been required to wear because of the sexual misconduct convictions. [*Id.*] Plaintiff does not dispute that he engaged in all of the disciplinary infractions, nor does he present evidence to refute the testimony that prison officials conducted an appropriate investigation. He merely provides copies of the grievances that he filed requesting protective custody, to which Defendants have adequately responded that they investigated the claims and found them lacking, an assertion supported by the fact that Plaintiff has not been assaulted since 2004. Therefore, the Court determines that Plaintiff's allegations do not rise to the level of a constitutional violation.

**Grievance Procedure**

To the extent Plaintiff attempts to assert a constitutional violation because his filed grievances were not appropriately processed, the law is well settled that there is no constitutional right to a grievance procedure. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137–38 (1977). Even if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (dismissing plaintiff's claim that he was retaliated against when he was barred access to the grievance process because "the Constitution creates no entitlement to grievance procedures or access to any such

15

procedure"); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding prison official's failure to comply with state's grievance procedure is not actionable under § 1983); *Doans v. Rice*, 831 F.2d 1057 (4th Cir. 1987) (noting inmate grievance procedures are not constitutionally required) (unpublished table decision). Thus, even if Plaintiff's grievance did not receive appropriate processing, Plaintiff has not stated a constitutional claim.

**Qualified Immunity**

Defendants also are entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[] and . . . whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). District court and courts of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555

U.S. 223, 236 (2009). Here, as discussed above, Plaintiff's allegations fail to demonstrate that Defendants violated Plaintiff's constitutional rights. Therefore, the Court finds Defendants are entitled to qualified immunity.

### **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Defendants' motion for summary judgment be GRANTED and Plaintiff's motion be DENIED.

IT IS SO RECOMMENDED.


s/ Jacquelyn D. Austin
United States Magistrate Judge

October 29, 2013
Greenville, South Carolina

17